UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| RICHARD SMITH,                      )<br>                                                     )<br>            Plaintiff,                        )<br>                                                     )<br>      v.                                         )<br>                                                     )<br>PAT & JANE EMBLEMS, INC.,   )<br>                                                     )<br>            Defendant.                   ) | Civil No. 05-127-P-H |

**RECOMMENDED DECISION ON DEFENDANT'S MOTION TO DISMISS
AND PLAINTIFF'S MOTION RESPECTING SERVICE OF PROCESS**

On July 6, 2005, Plaintiff Richard Smith, presently a Maine resident, filed suit under the Copyright Act against Defendant Pat & Jane Emblems, Inc. ("Emblems"), a Taiwanese manufacturer who allegedly manufactured and shipped to a New York distributor certain lapel pins that violated Smith's copyrights. In addition to copyright infringement, Smith alleges various common law torts. Smith's effort to accomplish service of process on Emblems was complicated by the fact that Smith does not know the physical address of the Emblems office in Taiwan, only its post office box address. Smith sent his complaint to Emblems by mail to the post office box, by fax and by email and also attempted to serve Emblems by serving a copy of the complaint and a summons upon certain individuals affiliated with American entities that do business with Emblems. On September 13, 2005, Emblems filed a motion to dismiss the action on the ground that service was not properly effectuated and also based on a lack of personal jurisdiction. (Def.'s Mot. to Dismiss, Docket No. 4.) On September 15, 2005, Smith filed a motion asking the Court to find that service was proper under the circumstances or to facilitate his efforts to effectuate proper service. (Pl.'s Mot. re. Service, Docket No. 5.) The Court

referred both motions to me on October 18, 2005, for recommended decision.  I recommend that the Court dismiss the complaint without prejudice.

## Legal Standard

Because Smith's copyright infringement claim presents a federal question, this Court's ability to exercise "personal" jurisdiction over Emblems falls under the Fifth Amendment due process clause rather than its Fourteenth Amendment analogue.  <u>United States v. Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 618 (1st Cir. 2001); <u>Richards v. Tsunami Softgoods, Inc.</u>, 239 F. Supp. 2d 80, 82 (D. Me. 2003).  "Under the Fifth Amendment, the federal court's power to assert personal jurisdiction is geographically expanded due to the absence of the federalism concerns that are normally present in a diversity case."  <u>Richards</u>, 239 F. Supp. 2d at 82 (citing <u>United Electrical, etc. v. 163 Pleasant St.</u>, 960 F.2d 1080, 1085 (1st Cir. 1992)).  As a consequence, "a plaintiff need only show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state."  <u>Swiss Am. Bank</u>, 274 F.3d at 618.  Nevertheless, in order to hale a defendant into a particular federal district court, a plaintiff must effectuate service of process in compliance with a federal statute or civil rule.  <u>Id.</u>; <u>163 Pleasant St.</u>, 960 F.2d at 1085; <u>Richards</u>, 239 F. Supp. 2d at 82.  In this regard, Federal Rule 4(k) states that a particular federal district court's power to "summons" a defendant is territorially limited.  Ignoring certain inapplicable special situations,[1] the service of a summons from this Court "is effective to establish jurisdiction over the person of a defendant" only if that defendant could otherwise be subjected to the jurisdiction of a Maine state court of general jurisdiction.  Fed. R. Civ. P. 4(k).[2]  However, in the event that the defendant is beyond the reach of the forum state's long-arm

---

[1] For example, Rule 4(k)(1)(D) recognizes that certain federal statutes authorize service upon individuals who might not otherwise be within the reach of the forum state's long-arm statute.  Unfortunately for Smith, the Copyright Act is not among them.  <u>Richards</u>, 239 F. Supp. 2d at 82.

[2] Rule 4 was amended in 1993.  Among other changes, former subsection 4(f) was restated in a new subsection 4(k).

statute, service of a summons from this Court will still be effective if the plaintiff can establish that the defendant, although subject to the laws of the United States, "is not subject to the jurisdiction of the courts of general jurisdiction of *any* state." Fed. R. Civ. P. 4(k)(2) (emphasis added).[3]

As the foregoing discussion implies, if Emblems does not have sufficient contacts with Maine to come within the reach of Maine's long-arm statute, but does have sufficient contacts with another state to support an exercise of jurisdiction by a federal district court in that forum, then a summons issued by this Court would lack the power to subject Emblems to this Court's jurisdiction even if Smith were to scrupulously adhere to all of the requirements of service set forth in Rule 4(f). Richards, 239 F. Supp. 2d at 88. The calculus that has been developed in this federal Circuit to address the 4(k)(2) inquiry involves the following order and burdens of proof:

1. The plaintiff first attempts to demonstrate that the state long-arm statute grants either "specific" or "general" personal jurisdiction over the defendant and that such grant does not exceed constitutional limits;

2. If the plaintiff fails to carry the preceding burden, he or she must make the following *prima facie* showing on the Rule 4(k)(2) provision: (a) the claim arises under federal law; (b) personal jurisdiction is not available under any situation-specific federal statute and (c) the defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements. Richards, 239 F. Supp. 2d at 87 (citing United States v.

---

[3] This provision was added to the Federal Rules in 1993 in order to "correct[] a gap in the enforcement of federal law [when] the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contacts with any single state to support jurisdiction under state long-arm legislations or [any] Fourteenth Amendment limitation on state court territorial jurisdiction." Id. (advisory comm. notes re. 1993 amendments at 50); see also Swiss Am. Bank, 274 F.3d at 618 (describing the provision as "closing the loophole").

    Swiss Am. Bank, Ltd., 191 F.3d 30, 41 (1st Cir. 1999)). In addition, the

    plaintiff "must certify that, based on the information that is readily

    available to the plaintiff and his counsel, the defendant is not subject to

    suit in the courts of general jurisdiction of any state." Swiss Am. Bank,

    191 F.3d at 41.

3. If the plaintiff carries the second burden, then it falls to the defendant to

    "produce evidence which, if credited, would show either that one or more

    specific states exist in which it would be subject to suit or that its contacts

    with the United States are constitutionally insufficient." Id.

4. If the defendant fails to run with this burden, then the Court may presume that no

    state court of general jurisdiction has personal jurisdiction over the defendant.

    However, if the defendant carries its burden, the plaintiff must decide whether to:

    (a) move for a transfer; (b) voluntarily discontinue his action in the forum

    in which it is currently pending; or (c) contest the defendant's assertion

    that it is subject to the jurisdiction and process of the other specified

    forum(s). Id. at 42.

### Mr. Smith's Allegations

The complaint[4] contains the following material allegations. Richard Smith is a graphic artist and holds copyrights in certain of his works. (Compl. ¶¶ 10, 17, 32.) Smith currently resides in Maine. Smith previously licensed a New York business entity know as The Education People ("TEP") to market products bearing the likeness of his copyrighted work. (Id. ¶ 9, 34, 39-

---

[4] Smith filed an amended complaint after the filing deadlines were terminated respecting the pending motions and after the motions were referred for recommendation. (Amended Compl., Docket No. 15.) The amended complaint adds several defendants but does not appear to change the basic nature of Smith's claims against Emblems. Smith did not file a motion to amend in conjunction with the amended complaint. The electronic docket reflects that on November 9, 2005, Emblems filed a motion to dismiss the amended complaint. (Docket No. 17.)

40.) TEP contracted with Pat & Jane Emblems, Inc., a Taiwanese manufacturer, to produce certain goods, including a "Circle of Children" or "Circle of Kids" lapel pin, made in the likeness of Smith's copyrighted work.  (Id. ¶¶ 3, 13-14, 33, 35-36.)  Emblems produced the goods and shipped them to yet another party, Metro-Pack Inc., a New York business entity that operates a warehouse and distribution center located in Newburgh, New York.  (Compl. ¶¶ 7-8, 36, 62-63.)  The goods ordered by TEP, made by Emblems and warehoused and distributed by Metro-Pack were sold primarily in a mail order catalog marketplace, although possibly in other markets as well.  (Id. ¶ 48.)  The catalog in question was produced for TEP by Bookcrafters, Inc., a denizen of Illinois, and printed by Berlin Industries, Inc., alleged to be a Delaware corporation with facilities in Delaware, Illinois and Nevada.  (Id. ¶¶ 49-53.)   Berlin mails the catalogs to individuals living in states throughout the country, including Maine.  (Id. ¶ 54.)  Orders for the products advertised in the catalogs are routed to Metro-Pack for processing and shipment.  (Id. ¶ 64.)

Smith and TEP previously litigated two copyright infringement actions in the United States District Court for the Southern District of New York which arose from TEP's continued production and/or distribution of certain copyrighted work after Smith revoked or otherwise discontinued the license to reproduce his work and after the initial lawsuit was settled.  (Id. ¶¶ 10-11, 40-46.)  According to Smith, Emblems infringed his copyrights by manufacturing and shipping to Metro-Pack additional products based on Smith's copyrighted work subsequent to the revocation of the license and/or the settlement of his first suit against TEP.  (Id. ¶¶ 2.)

Smith describes Emblems as "an alien entity with no known physical business holdings or real property in this country, although it regularly exports goods to the United States of America."  (Id. ¶ 6.)  According to Smith, "Pat & Jane [Emblems] produced goods bearing

5

Smith's Artwork, sold them to TEP, and exported them to the United States."  (Compl. ¶ 36.) Smith alleges that Emblems "may have assigned, licensed, sold or otherwise transferred Smith's Artwork to other Parties. . . . . Pat & Jane [Emblems] may sell products in other markets or to other customers unknown to the Plaintiff."  (Id. ¶ 37.)  Other than these theoretical allegations of shipment to unknown individuals, Smith's complaint is based entirely on the alleged production and shipment of infringing goods made for TEP and shipped to Metro-Pack in New York.  (Id. ¶ 62.)

## Defendant's Affidavits

Emblems has submitted affidavits from Attorney Kenneth Africano, counsel for TEP in the New York litigation and counsel for Emblems herein, and from Patrick Chu, the president of Emblems.  (Docket No. 4, Elec. Attach. 1 & 2.)  Mr. Africano's affidavit corroborates Smith's allegations concerning the business relationship that exists among TEP, Metro-Pack and Emblems and also relates that the license between Smith and TEP was discontinued around 1999.  (Africano Aff. ¶¶ 4-5.)  According to Africano, this litigation arises out of TEP's "erroneous" acceptance of approximately $16,000 in orders for a certain "Circle of Children" lapel pin and $500 in orders for another pin.  (Id. ¶ 5.)  In the second of the prior suits, the jury returned a verdict for Smith in the sum of $35,000 and found that TEP has not intentionally violated Smith's copyrights.  (Id. ¶ 6.)  Africano further states that the subject pins were made by Emblems in Taiwan and shipped to Metro-Pack's New York facility, and that none of the underlying "dealings" have any nexus to Maine.  (Id. ¶ 11.)  He also relates that Smith lived and worked in New York at the time of the events that give rise to this action.  (Id.)

Mr. Chu's affidavit relates that Metro-Pack is not a subsidiary or affiliate of Emblems, that none of the principals of Emblems have any ownership interest in Metro-Pack and that

Metro-Pack's principal, one Mr. Sgombich, is not and never has been an officer, director, employee or agent of Emblems. (Chu Aff. ¶ 3.) Chu further relates that Emblems has its sole place of business in Taiwan and is not incorporated in, owns no property or office in and maintains no personnel or agents anywhere in the United States. (Id. ¶ 7.) Chu avers that Emblems has never had any business dealings in Maine and has never shipped products to Maine. (Id. ¶¶ 10-11.) According to Chu, Metro-Pack's Newburgh, New York facility is the only location to which it has shipped goods in the United States. (Id. ¶ 12.) Both Mr. Chu and Mr. Africano offer further averments regarding the quality of Mr. Smith's efforts to date to serve Emblems. Neither offers any opinion regarding Emblems's amenability to service of process issued by any of the United States District Courts for the District of New York.

### Mr. Smith's Responsive Proffer

In support of his motion regarding service and in opposition to Emblems's motion to dismiss, Smith submitted five exhibits that reflect the steps he has taken to date to serve Emblems with the complaint and summons. (Docket No. 5, Exs. A-E.) He has also filed some invoices that appear to reflect shipments from Emblems to Metro-Pack (Docket No. 7, Exs. B, C, E), a copy of an April 14, 2005, judgment entered in the New York litigation against TEP (id., Ex. D), and a copy of a publication prepared by the Maine Arts Commission in August 2004 titled, "Proceedings from the Blaine House Conference on Maine's Creative Economy" (id., Ex. F). None of these documents appear to have any tendency to establish that Emblems has any jurisdictional contacts with the State of Maine. Smith also fails to controvert any of the sworn statements made by Mr. Africano or Mr. Chu on the jurisdictional question.

7

**Discussion**

Mr. Smith's first challenge is to demonstrate that Maine's long-arm statute grants either specific or general jurisdiction over Emblems. Smith notes that neither of the affidavits submitted by Emblems disavows an agency relationship between Emblems and TEP. (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 4, Docket No. 7.) Although this is true, Smith did not attempt to serve Emblems by personally serving TEP or its principal. He did, however, serve Mr. Sgombich of Metro-Pack with the complaint and summons. Additionally, it is not Emblems's burden to demonstrate the absence of jurisdictional contacts; it is up to Smith to demonstrate the existence of such contacts. Smith also digresses into a discussion of whether there might exist an agency relationship between Metro-Pack and TEP. Although he considers it a matter of "grave concern," the relationship of those parties does not speak to Emblems's own contacts with the State of Maine. (Id. at 6.) Next Smith argues that the Africano and Chu affidavits ought to be disregarded because they are not evidence. (Id.) This is, of course, incorrect. Like other sworn testimony, statements made in affidavits can be competent evidence. Smith offers no contradictory evidence on the material question of Emblems's contacts with Maine and his complaint does not allege any actual contacts by Emblems either. As a fallback, Smith requests that the Court grant him leave to conduct jurisdictional discovery, postulating that agency relationships or business affiliations may exist between or among Emblems, Metro-Pack, TEP and/or Berlin Industries that would prove sufficient to meet the jurisdictional contacts test. (Id.) With regard to the agency or affiliation issue, Mr. Chu has averred that Emblems owns no property in the United States and has no agents here, either.

Because the record is devoid of any evidence that Emblems has either general and systematic contacts or litigation specific contacts with Maine, the Court should move on to the

subsequent inquiries. With regard to jurisdictional discovery, the Court has broad discretion to permit or deny it. Noonan v. Winston Co., 135 F.3d 85, 94 (1st Cir. 1998). The only Maine contacts that any of the third-parties have with this forum involve the alleged distribution of catalogs to Maine residents by Berlin Industries and the possible shipment of goods from Metro-Pack's facility in response to theoretical orders placed by Maine residents. In order for these Maine contacts to be relevant to the question of this Court's jurisdiction over Emblems, discovery would have to demonstrate that Metro-Pack or Berlin shipped the catalogs or goods to Maine residents for Emblems.[5] Smith's own allegations reflect that Metro-Pack and Berlin advertised and distributed the goods for TEP, not for Emblems.[6]

Turning to the Rule 4(k)(2) prima facie test, Smith must demonstrate that his claim arises under federal law, that personal jurisdiction is not available under any situation-specific federal statute and that the defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements. In addition, he "must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state." Swiss Am. Bank, 191 F.3d at 41. Smith's copyright claim arises under a federal law, the Copyright Act, which does not afford this Court with the power to effectuate nationwide or global summonses beyond the territorial limits of Maine's long-arm statute. Janmark Inc. v. Reidy, 132 F.3d 1200, 1201 (7th Cir. 1997); Richards, 239 F. Supp. 2d at 87. Thus, Smith meets the first two prongs of the test. The third

---

[5] As noted by Judge Carter in Richards, the First Circuit Court of Appeals has cautioned that "sales by an independent distributor . . . or separately incorporated subsidiary normally do not count as 'contacts' of the manufacturer or parent corporation." 239 F. Supp. 2d at 86 n.3 (quoting Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik, 295 F.3d 59, 63 n.3 (1st Cir. 2002)).

[6] Smith argues that because the State of Maine wants to develop a "creative economy," it would want a state court to exercise jurisdiction over Emblems in order to protect a local artist's creative work. I find Maine's generalized interest in developing a creative economy to be insufficient to give rise to personal jurisdiction over a foreign corporation that has no generalized, systematic contacts with Maine and has not engaged in any forum contacts that contributed to the claim at issue.

test is whether Emblems has sufficient minimum contacts with the Nation as a whole to satisfy Fifth Amendment due process precepts. Swiss Am. Bank, 191 F.3d at 41; Quick Techs. v. Sage Group Plc, 313 F.3d 338, 344 (5th Cir. 2002). The most significant record evidence regarding forum contacts reflects that Emblems exports goods to New York in response to commercial orders placed by TEP, a United States domiciliary. Even if these contacts are not sufficient to support a finding that "general jurisdiction" exists, see Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984), these contacts are likely sufficient to support a finding that specific jurisdiction exists because these exports and the related contracts (all New York contacts) reflect that Emblems has purposefully directed its commercial activities at a United States forum and the litigation arises directly out of certain of these individual contacts (contracts and exports), which are alleged to amount to contributory infringement, see, e.g., Armstrong v. Virgin Records, Ltd., 91 F. Supp. 2d 628, 638 (S.D.N.Y. 2000) (finding that foreign defendant's mere licensing of domestic defendants' production and distribution of copyright infringing articles likely gave rise to personal jurisdiction over foreign defendant); Quick Techs., 313 F.3d at 344 (addressing Lanham Act claim and dismissing case against foreign defendant because the defendant's United States contacts were not systematic and the plaintiff's claims did not arise out of the defendants' alleged contacts); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-473 (1985) (discussing the specific jurisdiction standard). In effect, due process would not be offended because the exercise of personal jurisdiction under these circumstances would not "offend traditional notions of fair play and substantial justice." Helicopteros Nacionales, 466 U.S. at 414 (internal quotation marks omitted). Thus, I conclude that Smith meets his third *prima facie* test.

The fourth hurdle in Smith's path requires him to certify that, "based on the information that is readily available to [him, Emblems] is not subject to suit in the courts of general jurisdiction of any state." Swiss Am. Bank, 191 F.3d at 41. Smith fails to clear this final hurdle. Although Smith asserts that he would "be left to question whether he has *any* remedy available . . . in *any* U.S. Court" in the event that his complaint is dismissed (Pl.'s Opp'n at 2), he simply fails to assert in a positive fashion that no other state could legitimately issue process and subject Emblems to its jurisdiction. The obvious state that jumps to mind here is New York given that all of Smith's allegations about Emblems's contacts with the United States describe contacts with New York. Whether the New York long-arm statute would reach Emblems under the circumstances of this case is something the parties have simply declined to address. I decline to address that question in the absence of any briefing by the parties, although I note that Emblems appears to assume that New York courts would have personal jurisdiction over it, which seems reasonable to me. (Def.'s Mot. to Dismiss at 9-10, arguing that New York is the proper venue for this litigation). However, I do note that the reach of New York's long-arm statute is not coextensive with the limits of due process, so that the preceding discussion does not resolve the issue. See Jacobs v. Felix Bloch Erben Verlag fur Buhne Fime und Funk KG, 160 F. Supp. 2d 722, 739 (S.D.N.Y. 2001) (discussing section 302(a)(1) of New York's long-arm statute). Because the initial burden falls upon Smith and he has failed to shoulder it, it would be inappropriate for this Court to presume that Rule 4(k)(2) authorizes this Court to determine his cause. Swiss Am. Bank, 191 F.3d at 41-42. Nor would it seem to be appropriate for this Court to sua sponte consider a transfer as Smith has argued against such a resolution to the pending motions and there are legitimate concerns over Smith's adherence to Rule 4's service requirements, although they are likely surmountable. See Rule 4(d).

## Conclusion

For the reasons set forth above, I **RECOMMEND** that the Court **GRANT** Defendant Pat & Jane Emblems's Motion to Dismiss (Docket No. 4).  I further recommend that the Court **DENY** Plaintiff Richard Smith's Motion Respecting Service (Docket No. 5) because the absence of personal jurisdiction over the defendant renders the motion moot; even if service were properly effectuated, that would not cure Smith's failure to demonstrate this Court's personal jurisdiction over Emblems.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated:  November 10, 2005